1

Brian E. Klein (WSBA #30732)
  bklein@bakermarquart.com

2

BAKER MARQUART LLP

3

2029 Century Park East, Suite 1600
Los Angeles, California 90067

4

Telephone: (424) 652-7800
Facsimile: (424) 652-7850

5

6

*Attorneys for Louis Ong*

7

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

10

11

UNITED STATES OF AMERICA,

Case No.: CR-17-191-RSL

12

          Plaintiff,

v.

13

LOUIS ONG,

**DEFENDANT LOUIS ONG'S
SENTENCING MEMORANDUM**

14

          Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Louis Ong is bright man who has deeply reflected on his unlawful and reckless actions that have brought him before the Court for sentencing on May 11, 2018.  Since his arrest in July 2017, he has taken tremendous and genuine steps to grow as a person, and made serious and real changes to his life.  He is being sentenced on a charge that he operated a money transmission business in Washington state that lacked the required state license.  He pleaded guilty to this crime, which is a felony federally but only a misdemeanor under Washington state law, on February 15, 2018.  Louis acknowledges he acted improperly, accepts full responsibility for his actions, is deeply remorseful, and will personally address the Court at the sentencing on these matters.

But before Louis does, the Court will read below and in the attached letters about his genuine remorse and growth as a person since his arrest.  The letters from family, friends, and others who have known Louis (both in Canada where he is a citizen and resided until his arrest, and in the United States where he has been detained out of custody since his arrest) supply a full – and very positive – picture of him, showing how committed he is to moving forward in his life with resolve to never again take actions like those that have put him before this Court for sentencing.

Louis stands before this Court to be sentenced as a non-violent, first-time offender.  Below are the many compelling reasons based on the factors set forth in 18 U.S.C. § 3553(a) that any term in custody is unwarranted.  Those reasons revolve around the totality of who Louis is (*e.g.,* someone who since his arrest has spent significant time reflecting on matters and volunteering nearly 200 hours at five different charities); who Louis can still be (a successful and law-abiding professional); how Louis has already been punished (he has been unable to return home to Canada since his arrest and has been restricted to residing at his sister's house in Los Angeles with active location monitoring and essentially no computer or internet access); Louis' acceptance of responsibility (which includes significant forfeiture); and the unique circumstances of the offense (*e.g.,* the underlying offense is a misdemeanor under Washington state law).  For these reasons, the Court should sentence Louis to a non-custodial sentence – a brief term of probation.  He would like to return home to Canada and begin rebuilding his life there as soon as possible.

DEFENDANT LOUIS ONG'S SENTENCING MEMORANDUM

# DISCUSSION

## 1. Sentencing Framework

The advisory sentencing guidelines are merely "one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  "[T]he history and characteristics of the defendant" are considered alongside "the nature and circumstances of the offense."  18 U.S.C. § 3553(a)(1).  "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; [and] to protect the public. . . "  *Carty*, 520 F.3d at 991.

The PSR has calculated an advisory sentencing guidelines total offense level of 17, resulting in a sentencing range of 24 to 30 months.  The defense and government expected this (and the defense does not contest it), and pursuant to the plea agreement, the government nonetheless agreed to recommend a prison sentence of no more than 18 months.  The government has informed the defense that it is recommending a term of imprisonment of 12 months plus one day.  The Probation Office has also recognized that the advisory sentencing guidelines range is too high by also recommending a prison sentence of 12 months plus one day.  A thorough and fair consideration of all the § 3553(a) factors, however, shows a non-custodial probationary sentence is merited.

## 2. Louis Ong's Personal History and Characteristics

Pursuant to 18 U.S.C. § 3553(a)(1), in arriving at a sentence that is "sufficient but not greater than necessary" to comply with the purposes of federal sentencing, the Court "should consider the nature and circumstances of the offense and *the history and characteristics of the defendant*."  (Emphasis added.)  The latter considerations are addressed by: (1) a brief overview of Louis' life and; (2) the words and voices of the many people who have come forward to write the Court letters regarding their knowledge of his many admirable qualities and good deeds.

### a. Louis' Upbringing, Schooling, and Work History

Louis was born in Singapore to his parents Yenher Ong and Siut Ngo Chai.  His father, Yenher, was a career public officer for over 30 years, serving in the Department of Labor most recently as a Presiding Judge.  His mother is a retired homemaker who worked as an accounting

1   clerk for an energy company to support her family after separating from Louis' father.  (PSR ¶ 35.)

2   They separated when Louis was only two, and his mother moved him and his sister to Kuala

3   Lumpur.  (*Id.*)  In 1987, Louis' mother moved them to Canada in search of a better life.  (*Id.*)  She

4   raised them as a single mother, and for over 20 years, Louis had no contact with his father.

5         Louis not only graduated from high school, but obtained his Bachelor of Science degree in

6   Computer Science from the University of British Columbia.  (PSR ¶¶ 43-44.)  Since then, he

7   pursued many personal development courses and seminars and has volunteered consistently,

8   including singlehandedly organizing a "get out and play" event to inspire physically inactive

9   teenagers to participate in sports.  He used his savings for the event, as well as obtained sponsors

10  such as Costco.  Louis was a senior mentor for the University of British Columbia Computer

11  Science mentoring program, and volunteered for the Red Cross.  As described in more detail below,

12  since his arrest, Louis has spent a significant amount of time volunteering.

13        In addition to school and volunteering, Louis has also consistently been employed.  He has

14  worked to develop software in the video game industry and has worked in retail, selling household

15  products, as well as working for Apple and Lululemon clothing.  He has always been an

16  entrepreneur eager to make his own way and contribute to society.

17        The fact that Louis' father abandoned him at a tender age and that *Louis*' efforts alone

18  reconnected both his sister and him with their father should be not overlooked.  Louis' father

19  acknowledges his failings as a father in his letter to the Court, which is attached in Exhibit A.[1]  He

20  lost touch with his children for over 20 years.  When Louis decided to track down his father, he

21  contacted the Singapore Department of Labor.  As a result of his efforts, he and his sister were able

22  to reunite with their father in Singapore.  In his letter, his father describes the impact of this reunion

23  and attributes it entirely to Louis.

24        Perhaps Louis' most important job prior to his arrest, and what he intends to resume as soon

25  as he returns to Canada, is that of caretaker of his ailing mother in Vancouver.  She is 69 years old

26  and her health has been deteriorating for years.  Louis has been her primary caretaker for some time.

27  _____

28  [1] Louis' father's letter includes a typographical error that he explained in an email that is included behind the letter.  He was unable to re-send a corrected version in time for filing, since his attempt to reattach the file failed.

3

His arrest and the resulting stress have contributed to her declining health.  He is eager to return to Canada as soon as possible to look after her and resume his role as a loving son.

Louis has learned a great deal from his errors.  He remains eager to improve himself and the lives of those around him.  He wants the Court to know that when given the opportunity in the future, he intends to pursue business opportunities with no less drive than before, but with far greater probity and most importantly, with absolute respect for the law.

### b.  Supportive Testimonials: The Louis Known to Family, Friends, and Others

Attached as Exhibits A, B, and C, respectively, are letters to the Court from people who know Louis well.[2]  Exhibit A consists of family letters from his parents, his sister, and her husband. The family's difficulties, and Louis' personal struggle – for which he accepts full responsibility – need little introduction to this Court.  But despite his arrest and the burdens it has imposed on them, his family remains 100% percent supportive.  Louis is deeply remorseful for the burdens and heartache his arrest has placed on them.

Exhibit B encompasses a number of letters from individuals Louis has met while in Los Angeles.  This includes people for whose organizations he has volunteered, as well as pastors who have helped him address what led him to this point and helped him down the path to being a better, more responsible person.  The writers each relate Louis' reliability and dedication to his volunteering, as well as his remorse and dedication to growth and change.

Exhibit C is comprised of moving letters from 11 people from other quarters of Louis' life, including schoolmates, co-workers, business partners, mentors, and friends he has met through his athletic pastimes like ultimate frisbee and hiking.  As the Court will read, they all respect Louis despite what has happened here.

Collectively, the letters leave no doubt that despite the crime he has committed, Louis has consistently touched and inspired people around him, and those individuals have not forgotten or abandoned him.  They will be there for him when he emerges from this period in his life to start his

---

[2] Several authors sent unsigned versions of their letters and then photographed images of their printed letters with their signatures.  Some individuals also sent photographs of themselves for the Court's reference.  For ease, the exhibits are organized with photographs (if provided) of the author first, the clearer unsigned version of the letter second, and the printout of the photograph of the signed letters last.

1   life anew, and he is committed to not letting them down.  Perhaps more importantly, the letters

2   reveal the picture of a changed man, one who has engaged in deep introspection, who has become

3   very involved in charity, and who seeks to move forward with his life.

4           After his arrest, Louis sought out the opportunity to attend church here in Los Angeles, and

5   began attending the Christian Assembly Church in North East Los Angeles.  Reverend Matthew

6   Price of the church describes a dedicated volunteer and a truly changed man who has faced his

7   mistakes, and gained great humility:

8

9               This involvement in our church has given Lou and I opportunity to talk
                about his guilty plea. He told me "I never thought of myself as someone
10              who needed to be forgiven for something, but now I know I am." Being
                convicted of his crime and pleading guilty has formed great humility in
11              him and his friendships in our church have helped him face the mistakes
                of his past and seek forgiveness. I have had the privilege of watching all
12              this happen. There is not an ounce of defensiveness in Lou. Pure remorse
                met with the gracious embrace of true friends has been healing and
13              transforming. He had hidden nothing and even expressed to me the feeling
                of freedom he has in facing what ever [*sic*] results from his trial. Whatever
14              may come from the sentence he receives, Lou is a man set on a new course
                in life.
15

16

17          Similarly, Louis has become close with Pisey Sok, a mental health therapist and Community

18   Life Pastor at the Christian Assembly Church, spending hours discussing his case and its impact on

19   his life.  He too has seen a changed man:

20              As our relationship grew, Lou shared with me about his story and how he
                pleaded guilty to charges related to operating an unlicensed money
21              transmission business. Over the months we have spent hours exploring his
                feelings surrounding this event. I sensed a deep feeling of remorse and a
22              strong desire to make things right. The circumstances surrounding this
                case has [*sic*] been a catalyst for exploration and discovery of a new way
23              of life. . . I believe that Lou is completely repentant of his past conducts
                [*sic*] and have [*sic*] grown to be a man of integrity who has a desire to
24              serve others.
25

26   ///

27   ///

28

Louis has volunteered at five organizations since his pretrial conditions were changed to allow him to leave his sister's home, and in total volunteered almost 200 hours. These organizations include The Gooden Center in Pasadena (a men's substance abuse treatment center in Pasadena), Union Station Homeless Services (San Gabriel Valley's largest social service agency assisting homeless and low-income adults/families), Union Rescue Mission (the United States' largest private homeless shelter); the Christian Assembly Church, and the Jesus Knows My Name Ministry (Feeding Homeless in LA's Skid Row). The individuals who have met Louis through his volunteering speak of a dedicated and helpful volunteer who has gone above and beyond to help. For example, Sean Strovas, the Connections Director for Christian Assembly Church, who oversees approximately 170 volunteers, has this to say:

> Louis has faithfully volunteered every weekend since the end of
> November and has been a key member of our volunteer team. Since
> November, I have entrusted Louis with the oversight of an offsite parking
> lot we rent. In the past, we have had conflict with the owner over how we
> are using the space, so I assigned Louis to oversee this site. Louis has
> served with a kind and friendly attitude and has greatly improved relations
> between our organization and the owner of the building. He is trustworthy
> and reliable and has been a great asset to our volunteer team!

Louis has also volunteered since January 2018 at the Jesus Knows My Name Ministry-Church, where he helped the homeless on Skid Row, and, since February, at the Gooden Center in Pasadena, a men's rehabilitation center where thousands have been treated since its founding in 1962. At the Gooden Center, Louis has been a "Client Advocate," a position in which he has exhibited kindness, support and a warm presence to individuals who were often in the darkest times of their own lives. The Program Assistant Supervisor at the Gooden Center, Matthew Suzuki has this to say about Louis:

> Mr. Ong explained his legal situation and did not place blame or guilt on
> anyone's actions but his own. . . Working in an environment which helps
> individuals who have done some real wreckage to the public, ones' senses
> become quite heightened in knowing if an individual appears sincerely
> remorseful for their personal actions and others' [*sic*] who do not. Mr.
> Louis Ong, in my eyes, is placed in the group that holds themselves

6

accountable and learns to make things right. . . I closely kept track of the impact Louis made on our clients, and even our staff, to see if his presence was helpful, neutral or negative. The conclusion I have made is that he excelled in everything asked to do, brought hope and inspiration to others, and lastly always brought a smile to peoples [*sic*] face.

Additionally, in the last two months, Louis has begun volunteering at the Union Station Homeless Services, where he helps prepare meals and clean up, among other things.  There too, he has gone above and beyond and expressed his remorse and regrets for the actions that led him here.  David Lightfoot Jr, the Food Services Manager there said:

Mr. Ong… has been a major asset to our operations. Mr. Ong has arrived early for his shifts and often stayed later than scheduled to complete tasks. He has been a role model to other volunteers, and has helped train new volunteers to adjust to duties in our operations. During his time here, he has had a great impact on our clients we shelter here by demonstrating an attitude of kindness, dignity and respect in all his interactions. Characteristics I would use to describe Mr. Ong are: a spirit of service, kindness, punctuality, strong work ethic, respect, humbleness and humility. . . Louis has shared his story with me and expressed extreme regret and remorse for this incident, but also seems resolved to face the consequences head on. Louis has left a lasting impression on us. . .

Louis has touched the lives not only of those struggling deeply that he has encountered through his volunteer activities, but also of many individuals that he has met along his path, including doctors, successful entrepreneurs and respected members of Canadian and American society.  His personality is that of someone easy to talk to with a warm smile, a good listener, and someone willing to go the extra mile for friends.  Kevin Prato, a Venezuelan artist who Louis met through Ultimate Frisbee and who moved to Vancouver without his family describes how Louis helped him significantly through the many challenges he faced as an immigrant:

When I first moved to Canada in 2013 to study computer graphics, I acutely experienced the challenges that many immigrants face: low income, poor communication skills, and no social support. As I wrestled with learning English and managing the cost of living, Louis was there. He showed constant support and concern for my well-being and has always offered assistance when I was in need. . .

7

DEFENDANT LOUIS ONG'S SENTENCING MEMORANDUM

> Louis, to me, is one of the most kind and selfless people I know. He genuinely cares for those around him, and has been a huge support to me from the moment I met him 4 years ago. I am aware that Louis has pleaded guilty to his conduct, and I believe he genuinely feels sincere remorse and regret for his actions.

Louis' care for others is something that has been a common thread throughout his life.  He is eager to return to being a close friend able to support those in his life when he is allowed to return to Canada.  One other thing that stands out about Louis is his ability to cultivate true friendships with everyone, even those he met on basic sales calls.

Dr. Teskey, a physician in Vancouver, describes how they met when Louis came to his door as a salesman.  Louis impressed Dr. Teskey so much that he invited him in and offered to mentor him and partner with him in a business if he was interested.  Not only did Louis accept this invitation, but he became a friend and guest in their home as well as a trustworthy, responsible businessman.

Even those who have just met Louis, like Scott and Cathy Green, who met Louis at church and now hike with him regularly, describe an open and honest man who has shared his life experiences openly, and dedicated his life to a new path, repenting this grave misstep:

> Over several more months. . .[Louis] opened up and spoke about his childhood, his difficulties, his hopes and dreams. I got to know Louis and have come to admire him. We began to see Louis at church much more often. I also noticed that Louis was volunteering at our church services. I asked him why, and he simply told me that he felt that God was working on him. . . We notice that Louis has accepted his own mistakes and is willing to accept his punishment. . . Louis is humble, gentle, kind, compassionate, understanding, friendly and repentant.

These friends are eager to continue their relationships with Louis and, for those in Canada, to resume spending time with him.  They are eager to support him and see him through this dark time.

Overall, there can be no doubt that Louis is a deeply remorseful and changed man.  He is eager to be allowed to return to Canada where he can resume his role as a cherished son and

caretaker to his mom, pursue new volunteer and professional opportunities, and return to friendships he has cultivated throughout his life.  This is his first – and it will be his last – involvement with the criminal system here, in Canada, or anywhere else for that matter.

### 3.   The Remaining 18 U.S.C. § 3553(a) Factors Support a Non-Custodial Sentence

In arriving at a sentence, that is "sufficient but not greater than necessary" to comply with the purposes of federal sentencing, the Court needs to consider a number of other factors, including: (1) the nature and circumstances of the offense; and (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, and (c) to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a).  The following is a discussion of how those factors, the most relevant ones here other than his personal history and characteristics discussed above, support a non-custodial probationary sentence.

#### a.   The nature and circumstances of the offense

The nature and circumstances of the offense weigh strongly in favor of the requested sentence.  Louis acknowledges that he engaged in criminal conduct and is guilty of a serious criminal offense, a federal felony.  In this case, he pleaded guilty to violating 18 U.S.C. § 1960(a) and (b)(1)(A) through his operation of a money transmission business in Washington state without the necessary state license.  States, like Washington, depend on those operating money transmission businesses to obtain licenses so they can, among other things, monitor those businesses' activities.  Louis does not dispute the importance of such laws, and he sincerely regrets his illegal conduct.  That said, it bears pointing out that on the full spectrum of federal felonies this is one of the more relatively minor ones.  This is a non-violent crime, and there are no allegations that Louis defrauded or stole money from anyone, let alone vulnerable victims.

Further, under Washington state law, failing to obtain a state money transmission license is only a misdemeanor (up to 90 days in jail) or a gross misdemeanor (up to 364 days in jail).  *See* RCW 19.230.030, and 19.230.300(2), (3).  This means Louis could be sentenced to no more than one year in jail in a Washington state court for the same offense he pleaded guilty to federally.  It

DEFENDANT LOUIS ONG'S SENTENCING MEMORANDUM

1    also almost surely means, in light of his first-time offender status and other circumstances described

2    in this sentencing memorandum, he would be sentenced by a state court to no time in custody at all.

**b.   The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

5    Since Louis was arrested on July 21, 2017, he has been in actual federal custody for 20 days,

6    and since then, while on subsequent pretrial release, he has lived under custodial-like restrictions

7    and conditions that regular defendants who are on pretrial release do not typically have to endure.

8    Overall, this has been a tremendous hardship that the Court should factor into its sentence.

9    When he was released to Pretrial Services supervision on August 7, 2017 following 20 days

10   in custody, Louis was placed on severe and very limiting restrictions in light of his personal

11   circumstances.  His was restricted to the Western District of Washington and the Central District of

12   California (unless directed otherwise by Pretrial Services).  This means that for almost a year now

13   he has not been able to return to his home in Canada (where he has lived his entire adult life) and

14   help care for his ailing mother.  Instead, he has spent his time in Los Angeles, residing at his sister's

15   house with her and her husband, other than when he attended two hearings in this case.

16   From the date of his pretrial release until September 22, 2017, he was on full home

17   confinement at his sister's house.  For over two months he was essentially stuck indoors all day in

18   someone else's house in what is to him another country.  On September 22, this severe restriction

19   was modified to curfew; however, again, he remained ultimately tethered to a home, city, and

20   country that are not his own.

21   More recently, on February 12, 2018, this restriction was reduced to stand alone monitoring.

22   Despite this further modification, Louis has had to wear an ankle monitor the entire time since his

23   August 2017 release to Pretrial Services supervision, which is an unusually lengthy period of time.

24   An ankle monitor is a social stigma particularly for someone trying to have a life in a new country

25   and city like Louis (at least one letter noted concern).

26   In addition to those significant restrictions and conditions, until February 12, 2018, Louis

27   was not permitted any computer or internet access.  In this modern age, this is more than just a

28   simple inconvenience.  It makes it hard to go about daily life, and makes things particularly difficult

10

when you are living in a city and country that are not your own.  Tasks, as simple as driving directions or the hours of grocery stores, are made more complicated and burdensome.  On February 12, this condition was slightly modified to permit him to access computers and the internet for purposes related to his case (*e.g.,* e-mailing his attorney).

Louis has also not been permitted to work while on pretrial release.  This is because he is a foreigner without the proper work permit.  As the Court can imagine, for someone who has always been as industrious as Louis, this in and of itself is a punishment.  Although he has found productive ways to fill his time, as noted above, he has had to put his professional life on hold.

Basically, Louis has not been home in almost a year and has lived under severe restrictions and conditions that have cut him off from life as he has known and enjoyed it.  Although he has not technically been in custody other than 20 days, the pretrial release restrictions and conditions when taken all together in his circumstances are very much like custody in terms of removal from every day society, and they have lasted almost a year.  In light of these facts, a non-custodial sentence of probation at this juncture will more than adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

### a.  Adequate deterrence to criminal conduct

Considering everything that has happened, discussed above, a sentence of probation is more than adequate deterrence for a number of reasons.  This includes, as was just discussed, the fact that Louis has been removed from his home country for almost a year, and during that time been in federal custody (20 days) or living under severe restrictions and conditions that have cut him off from regular life (the rest of time).

In addition, as part of his plea agreement that would be a deterrent to anyone considering doing what he has done, Louis agreed to forfeit significant funds that far exceed the value of the transactions discussed in his plea agreement.  Specifically, he has forfeited approximately 75 bitcoins, 50 bitcoin cash, and $235,000 in cash.  The value of the bitcoins and bitcoin cash at the time the government seized them was approximately $220,000.[3]  The value at the time he agreed to

---

[3] Based on the Coindesk BPI price index: on July 21, 2017, the price of one bitcoin was approximately $2,700; and on August 3, 2017, the price of one bitcoin was approximately $2,815.  Approximately 25 bitcoins were seized on July 21,

11

1    forfeit them about 6 months later was approximately $920,000.[4]  This represents a tremendous

2    increase in value, and also a significant level of deterrence, since people engage in the type of crime

3    to which he pleaded guilty to make money and what he agreed to forfeit, approximately $1,155,000

4    ($920,000 + 235,000), vastly exceeds the value of the transactions at issue, which is $311,000.

5         Lastly, Louis' status as a felon as a result of this conviction may forever foreclose his ability

6    to return to the United States to visit his beloved sister, or for any other purpose.  This additional

7    significant hardship should not be overlooked.

8              **b.  Protection of the public from further crimes**

9         Neither imprisonment nor other forms of custody are needed to protect the public from

10   future crimes.  Based on his lack of criminal history alone, Louis poses the lowest possible risk of

11   recidivism.  More importantly, as the letters attest, he has done genuine soul-searching since his

12   arrest and has learned his lesson.  As such, Louis presents no risk of reoffending and any form of

13   custody is wholly unnecessary to protect the public.

14                          **CONCLUSION**

15        Louis Ong is sincerely remorseful for what he has done, and he is dedicated to being

16   productive and law-abiding citizen.  Consistent with the factors set forth in 18 U.S.C. § 3553(a), he

17   respectfully requests that the Court impose a non-custodial sentence of probation.  Louis should be

18   permitted to return home to Canada as soon as possible.

19    DATED:  May 4, 2018                    Respectfully submitted,

20                                             _/s/ Brian E. Klein_____

21                                           BRIAN E. KLEIN
                                             Baker Marquart LLP
22                                           2029 Century Park E – Suite 1600
                                             Los Angeles, CA  90067
23                                           Email: bklein@bakermarquart.com
                                             Telephone: (424) 652-7800
24                                           *Attorneys for Louis Ong*

25

26   2017 and approximately 50 on August 3, 2017, so the approximate total price of the combined 75 bitcoins when seized
     was $208,250 ($67,500 + $140,750).  The price of bitcoin cash on August 3, 2017 was approximately $440, based on
27   Coinmarketcap, making the approximately 50 bitcoin cash worth about $22,000.
     [4] Based on the Coindesk BPI price index, on January 29, 2018, the price of bitcoin was approximately $11,160.  The
28   approximate total price of the approximately 75 bitcoins on January 29, 2018 was $837,000. The price of bitcoin case
     on January 29, 2018 was approximately $1,670, making the approximately 50 bitcoin cash worth $83,500.

                                       12

# EXHIBIT A

April 17 2018

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

Re: United States v. Louis Ong
    CR-17-191-RSL

Dear Judge Lasnik,
I am the mother of Louis Ong. I am a retired homemaker
with a Bachelor of Commerce degree from Singapore University.
I will be 69 years old this September. I have been living in
Canada with my son for 30 years. I immigrated to Canada
with my two children in 1987 after I divorced with Louis's
father. Louis was 7 years old then.

Louis is such a loving and caring son to me, I was so shocked
when he got arrested and never expected this day would come.
I feel so sorry of what had happened to him and want
to apologize for what he did.

Louis is very kind and helpful to his family and friends.
Even though he was brought up in a single family, he worked
very hard to achieve the best in order to impress people and
to improve himself. He got his Bachelor of Science degree from
University of British Columbia, Canada. He lives a decent life,
he never smoke, don't do drug, don't drink alcohol and don't
gamble. He likes sports such as playing ultimate frisbee,

hiking, exercising at gym etc. Leisure time he likes to watch hockey
and soccer games, goes to music concerts, reads books, play guitar...
He is a very friendly person, cheerful, generous, outgoing, good
listener, outspoken and likes to discuss issues openly so he is
well-liked by many friends in Vancouver.

Louis attended many Seminars and Personal Development Programs
in order to become a better person. He encouraged other people
to do the same. He has done good deeds to contribute to
the society. He was the creator and organized the 'get out and play'
event to promote inactive teenagers playing sports during summer.
He recruited volunteers and got sponsors such as Safeway, Costco
etc to support this event. He used his own savings to have
it done successfully. He was a senior mentor for the University
of British Columbia Computer Science Tri-Mentoring program.
He has participated in learning and coaching different programs.
He also worked for Red Cross to go door-to-door to ask
people to donate for charity.

Louis has working experience with video games industries
developing software and later with many sale experience
including sales of household products, Apple's computer,
Lululemon clothing, gas products for Energy Companies.
He likes to meet and interact with people that is why
sale is more suitable way for him to make a living.

Louis is very regretful and remorseful of what happened

that made him today. He is a changed person now. He believes in god and going to Church every week and doing volunteer works to help.

Louis is the only family member I have in Vancouver. He has been taking care of me all these years. Living alone and with deteriorating health problems, it will be a great relief if my son can return here to continue looking after me.

I sincerely hope that Your Honor will give him a chance to get back to the right track of life and let this young man back to the Society and to Canada sooner with lenient sentencing.

Thank you for your Consideration.

Yours sincerely,

Siut Ngo Chai

17 Apr 2018

Dear your honor - Judge Lasnik

**United States V Louis Ong**

I refer to the above mentioned case involving a charge against Louis Ong for operating an unlicensed money transmission business.

My name is Yenher Ong. I am the father of Louis and I am writing to you, your honor, to seek leniency based on the good character and attributes of my son, his willingness to help others and his readiness to accept responsibility when a wrong doing or mistake has been made. From his undeserved willingness to cooperate with the relevant authorities in the investigation over the months, it has shown that he is indeed remorseful over the violation and determine to ensure that such wrong doing will not occur again.

Your honor, let me introduce myself. I am a Singapore national and has been a career public officer for over 30 years and have retired recently. I served in the Department of Labor in Singapore as a Director-General/Commissioner for Labor and in the early part of my career, I was appointed the Presiding Judge responsible for the administration and adjudication of labor disputes and claims, particularly in pursuing cases lodged by low wage and deprived workers. As a retired public officer, I could consider myself to be satisfactory in my career. However, I must say that as a father, I have failed to be a guidance for Louis and his sister to see them through their childhood and education as a result of the breakdown of my marriage in the early years. This has also led to my former wife and our two children to decide to migrate to Canada when she secured an employment in Vancouver in the mid 80s. While I had been providing them with financial support, we have in fact lost touch of each other for more than 20 years until one day Louis decided to contact the Department of Labor to look for me. His initiative arising from his desire to reconnect with me the father has borne fruit and has resulted in my reunion with my two children whom I have lost touch for more than 20 years and have been hoping that one day we could still meet. This finally happened. Having contacted me, Louis and his sister, who has been a US citizen residing in LA, had decided to come down to Singapore to meet up with me. One could imagine the emotions and the joyous moment when we meet for the first time after more than 20 years of separation without any communication.

Notwithstanding my absence from their childhood days, I should say that they were fortunate to have a good education in Canada and did well in their college examinations.

While I am surprised and sad to learn that Louis has been charged for violating the US law, as a career public officer who spent all my years in administrating and executing laws and regulations, I am comforted that my son has done the right thing by accepting full responsibility for the violation of the law.

Your honor, in summary, I hope that you could give due consideration to the good character and attributes of this young man, particularly his readiness to accept mistake and take responsibility, and grant him a much lighter penalty so that he could still turn a new leaf and be a useful, responsible and law abiding person in society.

Your kind consideration of my appeal for leniency will be deeply appreciated.

Your sincerely

Yenher Ong

**Ashley Martabano**

| | |
|---|---|
| **From:** | Ong Yen Her |
| **Sent:** | Tuesday, April 17, 2018 2:50 AM |
| **To:** | Ashley Martabano |
| **Subject:** | Fwd: resent |
| **Attachments:** | Picture (Device Independent Bitmap) 1.jpg |

Hi Ashley
I note that there is a spelling error in my letter. The word should be unreserved instead of undeserved.
I have amended it and is sending it to you. Please use this amended letter. My apology. Thank you.

Yenher Ong

---------- Forwarded message ---------

*Message Classification: Restricted*



**PA to Sr Director & Co-ordinating Secretary to Directors (LRWD)**
Labour Relations and Workplaces Division . Ministry of Manpower  **www.mom.gov.sg**

**Vision:**                    **Values:**



1

April 12, 2018

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

Re:  United States v. Louis Ong
     CR 17-191-RSL

Dear Judge Lasnik,

I am writing in regards to my younger brother, Louis. As his only sibling growing up, Louis and I
been through a lot of shared experiences, from our parents' divorce, to being raised by a single
mother, to our immigration from Southeast Asia to Canada having to start a new life in a foreign
country. As it has been for me, I believe that growing up not having a male role model in his life
has been difficult for Louis.

My brother is a kind and thoughtful person to his family and friends. He is a loving son who
takes care of our aging mother, which I am especially grateful for since I don't live close to her
and he is the only family member around. He is generous to his family and delights on giving us
gifts on a whim. He is also generous to his community. Some years ago, with much time and
effort and at his own expense, he set up a fun outdoor event for the neighborhood youth. Louis
takes part in the ultimate frisbee community in Vancouver not just to play, but to help build
teams and to give back. He enjoys activities where he can bring people together and form
lasting connections. Recently, while staying at my home pre-trial, Louis has been volunteering at
his church, at a local rehab center and at a homeless center, where he delivered food and
worked in the kitchen. I see firsthand that these volunteer experiences have given him humility
and gratitude for what he does have.

Louis believes in being honest and open with everyone, and living a life with integrity - doing
what you say you would do. He always encourages me to speak my mind and to advocate for
myself, and is always there to listen to me. He is constantly trying to better himself and
encourages others to do the same. He reads voraciously and likes to share inspiring books with
me that have helped him along the way.

My brother has expressed to me that he is genuinely remorseful and takes full responsibility for
his actions. I believe he has learned from and is humbled by this experience, and is seriously
examining the choices he makes in the future. I hope the court imposes a more lenient
sentencing that it deems appropriate, so that he may be able to change his course for the better,
and go home and care for our mother.

Thank you for your consideration. Should you need to contact me regarding this statement,
please feel free to call me at 626-590-6880 or email me at msmingong@gmail.com.

Sincerely,

Ming Ong

April 12, 2018

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

Re:   United States v. Louis Ong
      CR 17-191-RSL

Dear Judge Lasnik,

I have known my brother-in-law, Louis, for about 18 years.

My brother-in-law is a good person who has made some wrong decisions that he
deeply regrets.

Louis has a kind heart. One of his goals has always been to help out his mom
knowing that she worked so hard to raise him and his sister on her own. He is
always trying to self-improve and looks to help others who are struggling with
similar issues.

I feel like a strong sentencing would hurt him more than help. He has had a lot of
time to reflect on the decisions that got him in to his current situation. I have
never seen him so depressed and remorseful, and all he wants to do is to go
home and piece his life back together. This last year has been a very humbling
experience for my brother-in-law and his family. We are hoping to put this
incident behind us as soon as possible and spend happier times together.

Thank you for taking the time to read this letter.

Yours truly,

Brian Damitz

# EXHIBIT B

Christian Assembly

Rev. Matthew Price

April 9, 2018

Honorable Robert S. Lasnik
United States District Court
For the Western District of Washington

**United States v. Louis Ong**
**CR 17-191-RSL**

Dear Judge Lasnik,

I am writing on behalf of my friend, Lou Ong, as a pastor of the church he has been part of since September of 2017. In that time I have had deeply honest conversations with him about his life. It is my pleasure to tell you what I know of Lou Ong.

Lou came to Los Angeles by house arrest in his relative's home which happens to be near the church I serve - a local church of about 3000 members in North East LA. We are actively involved in the betterment of our city and are well known in the surrounding neighborhoods.

Having very little understanding of Christianity and no background of church involvement Lou requested that once a week he be allowed to attend a church and was granted that permission. Our church being close by, he began attending services finding the messages hopeful and the people friendly. Eventually he joined our volunteer parking team to help facilitate our weekend gatherings. He is excellent at it! His friendly and welcoming nature is noticeable and it helps that he has begun to genuinely love our church family. As his curfew was broadened he got involved in a Life Group that hikes together and prays for one another.

This involvement in our church has given Lou and I opportunity to talk openly about his guilty plea. He told me "I never thought of myself as someone who needed to be forgiven for something, but now I know I am." Being convicted of his crime and pleading guilty has formed great humility in him and his friendships in our church have helped him face the mistakes of his past and seek forgiveness. I have had the privilege of watching all this happen. There is not an ounce of defensiveness in Lou. Pure remorse met with the gracious embrace of true friends has been healing and transforming. He has hidden nothing and even expressed to me the feeling of freedom he has in facing what ever results from his trial.

Whatever may come from the sentence he receives, Lou is a man set on a new course in life. My hope is that his true character will be evident in his trial and that as his judge, you will take into account the positive effect this trial has already taken on his life when you decide his sentence. I humbly and boldly ask you to consider rendering as lenient a sentence as possible for my friend.

With hope and gratitude,

Rev. Matthew S. Price

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

United States v. Louis Ong
CR 17-191-RSL

Dear Judge Lasnik,

This letter is in regard to Louis Ong.  Please allow this letter to serve as my personal
knowledge and dealings with Louis.  I am the Connections Director for Christian Assembly
Church in Eagle Rock, CA.  I oversee all the volunteers for the Welcome and Hospitality team, a
total of about 170 volunteers.

Last fall, I was introduced to Louis by one of our Pastors as a new volunteer.  I was not
given any background information regarding Louis except that he wanted to volunteer.  Louis
has faithfully volunteered every weekend since the end of November and has been a key member
of our volunteer team.  Since November, I have entrusted Louis with the oversight of an offsite
parking lot we rent.  In the past, we have had conflict with the owner over how we are using the
space, so I assigned Louis to oversee this site.  Louis has served with a kind and friendly attitude
and has greatly improved relations between our organization and the owner of the building.  He
is trustworthy and reliable and has been a great asset to our volunteer team!

It has been a pleasure to get to know Louis, and I sincerely hope that you would consider the
most lenient sentence the Court deems appropriate.

Thank you for your consideration,

Sean Strovas
Connections Director
Christian Assembly Church

# CHRISTIAN ASSEMBLY CHURCH

April 20, 2018

Honorable Robert S. Lasnik
United States District Court
For the Western District of Washington

## United States v. Louis Ong
## CR 17-191-RSL

Dear Your Honor,

My name is Pisey Sok, I am a Community Life Pastor at Christian Assembly Church in Los Angeles. In addition, I work as a mental health therapist. I am writing on behalf of Lou Ong to share with you about my work with him in the past 9 months. My first impression of Lou was that he was respectful, articulate, kind, and genuine. I started meeting with him regularly to talk about the values of our church community and he was eager to volunteer and serve in our community. He faithfully volunteered to help with our hospitality team, welcoming and greeting visitors, and assisting with parking and security.

As our relationship grew, Lou shared with me about his story and how he pleaded guilty to charges related to operating an unlicensed money transmission business. Over the months we have spent hours exploring his feelings surrounding this event. I sensed a deep feeling of remorse and a strong desire to make things right. The circumstances surrounding this case has been a catalyst for exploration and discovery of a new way of life. Lou has been deeply impacted by the hospitality at our church has been deeply moved by the teachings of Jesus Christ in the Holy Bible. He's been wrestling with what it means to forgive someone who has violated your trust and learning how to live with a sense of gratitude and purpose each day.

Lou uses his time to serve others in our community and volunteers regularly at different organizations in the city serving the homeless community at Skid Row in Los Angeles and volunteering at a drug rehab facility in Pasadena. He has learned to step out of his comfort zone and have greater appreciation and compassion for those who are less fortunate than him. Lou is resilient and have stayed positive about doing the best he can with the time he has been given by the courts. I have noticed a tremendous change in his attitude since we

started meeting together. He's open-minded and willing to listen to people's idea and opinions without getting defensive or offended. I've notice that Lou has been grateful to have the opportunities to be a part of our church community and find sense of belonging.

I believe that Lou is completely repentant of his past conducts and have grown to be a man of integrity who has a desire to serve others. I am asking and praying that you would consider the lowest sentence permitted under the law for his charges. May God continue to grant you wisdom, courage, and understanding as you uphold the law. Thank you for your consideration.

Sincerely yours,

Pisey Sok, MDiv, MA



## *Church without Walls*

**April 10, 2018**

**Honorable Robert S. Lasnik**

**United States District Court**

**For the Western District of Washington**

**Dear Your Honor,**

### United States v. Louis Ong

### CR 17-191-RSL

I am the president of Jesus Knows My Name Ministry-Church since April 2014 sharing the Gospel and helping the homeless friends at Skid Row. Louis Ong is one of our faithful volunteers since January 6, 2018 Jesus Christ' love shine through Louis to the poor, willingly to take extra steps to help others.

When I met him the first time he confessed his crime and he expressed sincere regret and remorse for the conduct he has pleaded guilty to. I truly impressed by his honesty.

I pray that Judge Lasnik have mercy on Louis Ong to give him the lowest sentence permitted under the law

Respectfully,

Jesus Knows My Name Ministry

Church without Walls

Jennifer Chou/President

Exhibit B - 26



## THE GOODEN CENTER
Residential & Extended Care Treatment for Men
BISHOP GOODEN HOME · BOCHMAN HOUSE · HOLLISTON COURT

April 14, 2018

Honorable Robert S. Lasnik
United States District Court
For the Western District of Washington

<u>United States v. Louis Ong</u>
CR 17-191-RSL

Dear Judge Lasnik:

My name is Matthew Suzuki and I work as the PA Supervisor for The Gooden Center, a men's rehabilitation center. For the better part of 5 years, I am blessed to see people turn their lives around, and become productive members of society. Mr. Ong contacted The Gooden Center in the first week of February inquiring to see if there was a volunteer position open. I have had the privilege of getting to know Louis Ong since early February of this year.

Louis was open and transparent with staff from the moment he was interviewed to become a "Client Advocate" (Volunteer). Mr. Ong explained his legal situation and did not place blame or guilt on anyone's actions but his own. As I stated earlier, I have been blessed in seeing individuals turn their lives around for the better and move on to help others in need. Louis has done exactly that through his volunteering at The Gooden Center.

Mr. Ong exhibited kindness, support, and a warm presence to some of our clients, which whom were in their darkest times of their lives. Mr. Ong possesses an innate ability to bring a smile to those in need. On numerous occasions, I would observe Mr. Ong interact with our clients in a way that often takes the average professional years to develop a certain level of experience.

Noted previously, Louis Ong was transparent and open with staff from the moment he interviewed to become a "Client Advocate." Working in an environment which helps individuals who have done some real wreckage to the public, ones' senses become quite heightened in knowing if an individual appears sincerely remorseful for their personal actions and others' who do not. Mr. Louis Ong, in my eyes, is placed in the group that holds themselves accountable and learns to make things right. Although Mr. Ong's volunteer work has not consisted of a vast amount of time, I believe that Louis is an asset to the general population. I closely kept track of the impact Louis made on our clients, and even our staff, to see if his presence was helpful, neutral or negative. The conclusion I have made is that he excelled in everything asked to do, brought hope and inspiration to others, and lastly always brought a smile to peoples face.



THE GOODEN CENTER

Residential & Extended Care Treatment for Men

GOODEN FOUNDING HOME · HOCHMAN HOUSE · ROLLESTON COURT

Your Honor, I understand that Mr. Ong made some seriously bad choices in the past; However, I do not believe he is a bad person, or a danger to the public. I also understand the severity of the crime he plead guilty to and am aware of the damage he has caused. I ask that the Court consider the most lenient sentence possible due to the impact the Mr. Ong has made on so many of us. Please feel free to contact me if you have any further questions.

Sincerely,

Matthew Suzuki / Program Assistant Supervisor

**Honorable Robert S. Lasnik**
**United States District Court**
**for the Western District of Washington**

**United States v. Louis Ong**
**CR 17-191-RSL**

Your Honor,

My name is Tyrone Nance, and I am the Volunteer Service Coordinator at the Union Rescue Mission located on Skid Row in Downtown, Los Angeles. About three months ago, Louis Ong contacted me regarding volunteering his time by being of service in any capacity needed at the mission. Since our first contact, Louis has been consistent in his service, volunteering three times a week for 4-hour shifts. Often, he stays to work double shifts spending 8-hours in service at a time.

While Louis has served with us, I have watched him fully engage and actively build solid relationships with both the staff and the residents experiencing homelessness in and around the mission.

It is my professional opinion through close observation of Louis Ong, that He is sincerely regretful of negative past decisions, and is actively moving toward a more positive way of living.

Sincerely,

Tyrone D. Nance
Volunteer Coordinator



**Honorable Robert S. Lasnik**
**United States District Court**
**for the Western District of Washington**

**United States v. Louis Ong**
**CR 17-191-RSL**

Your Honor,

My name is Tyrone Nance, and I am the Volunteer Service Coordinator at the Union Rescue Mission located on Skid Row in Downtown, Los Angeles. About three months ago, Louis Ong contacted me regarding volunteering his time by being of service in any capacity needed at the mission. Since our first contact Louis has been consistent in his service, volunteering three times a week for 4-hour shifts. Often, he stays to work double shifts spending 8-hours in service at a time.

While Louis has served with us, I have watched him fully engage and actively build solid relationships with both the staff and the residents experiencing homelessness in and around the mission.

It is my professional opinion through close observation of Louis Ong, that He is sincerely regretful of negative past decisions, and is actively moving toward a more positive way of living.

Sincerely,

Tyrone D. Nance
Volunteer Coordinator

UNION RESCUE MISSION
he Way Home

Honorable Robert S. Lasnik                                    May 3, 2018
United States District Court
For the Western District of Washington

<u>United States v. Louis Ong</u>
CR 17-191 RSL

Dear Judge Lasnik,

My name is David A. Lightfoot Jr. and I am the Food Services Manager here
at Union Station Homeless Services.

I have known Mr. Louis Ong for approximately two months. Mr. Ong has been
volunteering here at Union Station for that time and he has been a major asset
to our operations. Mr. Ong has arrived early for his shifts and often stayed later
than scheduled to complete tasks. He has been a role model to other
volunteers, and has helped train new volunteers to adjust to duties in our
operations.

During his time here, he has had a great impact on our clients we shelter here
by demonstrating an attitude of kindness, dignity and respect in all his
interactions. Characteristics I would use to describe Mr. Ong are: a spirit of
service, kindness, punctuality, strong work ethic, respect, humbleness and
humility.

In addition to volunteering at Union Station, Louis volunteers at other charities
as well and speaks often of his sincere wishes to help the end users of these
charities.

Louis has shared his story with me and expressed extreme regret and remorse
for this incident, but also seems resolved to face the consequences head on.
Louis has left a lasting impression on us and I would only ask that you find it
in your heart to exercise mercy and/or leniency in this case, and to please
impose the most lenient sentence the Court considers to be appropriate.

It is my opinion that this experience has served as a learning moment in Mr.
Ong's life and once his sentence is finished, I'm sure that he continue to do
great things as a contributing member of society.

*David A. Lightfoot Jr.*
*Food Services Manager*
*Union Station Homeless Services*

UNION
STATION
HOMELESS
SERVICES

HOUSING • EMPLOYMENT • LIFE SKILLS

825 E. Orange Grove Blvd.
Pasadena, CA 91104
P 626.240.4550
F 626.798.1640
www.unionstationhs.org

PROGRAMS
Coordinated Entry System
Family Solutions
Holly Street Housing
Adult Center
Family Center
Euclid Villa
Centennial Place
Sources

*"Change will not come if we wait for some other person or some other*
*time. We are the ones we've been waiting for. We are the change that we*
*seek".*

# EXHIBIT C

Exhibit C - 32

**Honorable Robert S. Lasnik**
United States District Court
**for the Western District of Washington**
**United States v. Louis Ong**
**CR 17-191-RSL**

April 7 2018

Dear Judge Lasnik,

My name is Dan Yuen and my wife's name is Sandra.

We have both known Louis Ong since July 7th 2008, so almost 10 years this July.

Both of us are self-employed for over 30 years and we are the founders of our own company Condal Holdings Inc. up in Vancouver BC Canada. We are public speakers and we travel across Canada and the United States and give seminars & workshops on personal self-development and how to create financial stability online.

We have coached and mentored over 20,000 people in the last 30 years and feel honored that we have this privilege to make a difference in so many other's lives.

We met Louis Ong in 2008 when he enrolled within our organization to receive personal coaching and mentorship. He was an amazing student who was humble and teachable and willing to make the necessary changes in his life so that he could "Succeed in Life "

He was a very accountable person that we trusted and could rely on if we needed him for anything. His people skills allowed him to achieve somewhat success that most individuals would never achieve.

Then Louis wanted to take a different path and we no longer saw him on a weekly basis. He did call me and ask if he could still confide and get counsel from us if he needed to. He stayed in touch with us about every two months and would give us updates on what he was doing.

We understood that he was involved with trading currency but we never knew to what extent. It seemed he was happy with what he was doing and still hungry to make something out of his life.

Then about 2 weeks ago he called us and shared with us his situation he got himself into that Your Honor is addressing.

In his voice I could hear the regret and remorse of what he did and he admitted "I am at total fault and take responsibility for my actions"

It did not sway our opinion of who he is because we know his character very well.  This is definitely out of character for what he has done.  We can both say that in the 10 years we have known him, Louis Ong has been a decent hardworking and trustworthy person.  We believe this incident is a one-time event that will never be repeated again.

Your Honor, please look favorably upon Louis's sentencing as this is his 1st offense. We believe he has already learned a big lesson in life and if you could impose a minimal sentence to complete his lesson, then I believe you will have placed another reformed citizen back into society to make a positive difference.

Sincerely

Dan Yuen

Exhibit C - 33

To: Honorable Robert S. Lasnik,
    United States District Court
    For the Western District of Washington

Re: United States v. Louis Ong
    CR 17-191-RSL

From: Dr. Luke M. Teskey, MD

Dated: 09/April/2018


Dear Judge Lasnik,


I am a medical doctor in the Greater Vancouver, B.C. area, where I live with my wife and two teenaged children. I have been practising medicine for the past twenty-nine years. In the past, I have been a clinical professor of Medicine associated with McGill University, teaching and working with medical students and Family Practice residents. I presently have a similar designation with the University of British Columbia; medical students intermittently spend time in my clinic, learning (hopefully) from me as they begin to see patients. I enjoy helping young, motivated men and women grow and learn.

Last week, Louis Ong, a young man whom I would consider a friend, called me to tell me that he has been charged with a crime in the United States. With obvious remorse and embarrassment, he told me of the situation - to which he has pled guilty - and asked if I would be willing to write a letter on his behalf. The answer was: "of course"!

I first met Louis about ten years ago when he knocked on our door, promoting an alternative natural gas utility company in our neighbourhood. (I had already made the switch to the company that he was promoting). Louis seemed to be a sharp young man who was working hard to achieve success in his work. He impressed me enough that I offered to show him how the Amway business worked and to partner with him in that business if he was interested.

Louis did eventually decide to start an Amway business, and over the next few years, my wife and I saw him at least once a week, as we mentored him in the business. He was a welcome visitor in our home, and we were very comfortable having him around us and our young children. He was always respectful to us, and always responsible with regards to payments for ordered products.

Louis was forever looking for another (legal and honest) way to make money and he always seemed to have his fingers in several pies. He wanted to be his own boss and did not like the

Exhibit C - 34

restrictions of a regular, "nine-to-five" job. Louis seemed to enjoy sales and he liked the Amway business. However, after about three or four years, I believe, he moved on to other things.

When Louis called me recently, he explained to me what he had been doing and how in doing so, he had broken a law in the state of Washington.

I believe that Louis is a good and honest young man who made a serious mistake. I hope that he has already learned (the hard way) from his error, and my recent conversation with him would leave me to believe that this is so. I understand that the law must impose a punishment for the crime committed. I would like to ask, on behalf of my young friend, that you show great leniency as you decide upon an appropriate sentence.

It is my prayer that Louis can soon begin to move forward with his life, and continue being a good and honest - and much wiser - man.

Thank you for taking the time to read my letter in support of my friend, Mr. Louis Ong.


Most sincerely,

Dr. Luke M. Teskey, MD

Exhibit C - 35

Honorable Robert S. Lasnik

United States District Court

for the Western District of Washington

<u>United States v. Louis Ong</u>

CR 17-191-RSL

Dear Judge Lasnik,

My name is Trevor van Hemert. I live in Vancouver BC Canada. I am a self-employed web designer and website owner.

I know Louis Ong through a website we mutually own, LimaEasy.com. I've known him for over 3 years, meeting him on a meetup.com hike where we discussed business ideas.

I've known Louis to be a generous and kind person. When we first started work on our website together, he showed us this by taking me and my wife out to dinner. It was there that my wife and I noticed what a good listener and conversationalist he is. He really cares about other people and in my estimation does not represent a threat to society.

For these reasons, I implore the court to impose the lowest appropriate sentence for his infraction.

Thank you for your consideration,

Trevor van Hemert

Exhibit C - 36

Honorable Robert S. Lasnik

United States District Court

for the Western District of Washington

United States v. Louis Ong

CR 17-191-RSL

Dear Judge Lasnik,

My name is Trevor van Hemert. I live in Vancouver BC Canada. I am a self-employed web designer and website owner.

I know Louis Ong through a website we mutually own, LimaEasy.com. I've known him for over 3 years, meeting him on a meetup.com hike where we discussed business ideas.

I've known Louis to be a generous and kind person. When we first started work on our website together, he showed us this by taking me and my wife out to dinner. It was there that my wife and I noticed what a good listener and conversationalist he is. He really cares about other people and in my estimation does not represent a threat to society.

For these reasons, I implore the court to impose the lowest appropriate sentence for his infraction.

Thank you for your consideration,

Trevor van Hemert

1

Exhibit C - 37

April 12, 2018

Honorable Robert S. Lasik

United States District Court

For the Western District of Washington


Re: United States v. Louis Ong

    CR 17-191-RSL


Dear Judge Lasnik,

I am writing to you on behalf of Louis Ong, a young man that has become a friend of our family in the last year. We met Louis while attending church services at Christian Assembly in Los Angeles, where my wife and I have attended for over forty years. It is not uncommon for my wife Cathy to reach out to strangers at any time or in any place, not just at church. But since she is the daughter of a minister, she has a special gift of making friends easily. One day she introduced me to Louis and mentioned that he may interested in joining her hiking group. My wife has a way of including everyone in her favorite hobby, hiking, even if they are meeting her for the very first time.


Within two weeks, Cathy was setting up a Saturday morning hike with two other friends, myself and Louis. It is amazing how much conversation can go on a long hike for several hours. While Cathy was up front, I spent time in the back of the group following Louis. I started asking him about himself, and he seemed somewhat reserved. I noticed the ankle monitor on his leg but did not bring it up in the conversation. Everything about the hike was pleasant, and at the end of the hike Cathy asked Louis if he would like to come along again sometime. He agreed. On our drive home, Cathy and I discussed the ankle monitor. We both thought that it would be a good idea to ask him about it next time.


Cathy planned another hike, but there were only going to be the three of us. On this hike, Louis was speaking more with Cathy, as I tagged along at a distance. When asked specific questions about the bracelet, Louis told her everything that was happening in his life. When I joined the conversation, I wanted to make sure that we were safe, alone and on a trail and all. I must have interrogated him for over an hour, and he was completely open about his situation. Of course, I have only known Louis on two hikes, but I came to the conclusion that Louis was on the right path, and that his path of repentance was authentic. Perhaps it was my own life

Exhibit C - 38

experiences that causes me to be suspicious of people.  But with Louis it was different, so Cathy and I continued to build our friendship with Louis.

Over several more months, Cathy's hiking group continued to enjoy the company of Louis.  He opened up and spoke about his childhood, his difficulties, his hopes and dreams.  I got to know Louis and have come to admire him.  We began to see Louis at church much more often.  I also noticed that Louis was volunteering at our church services.  I asked him why, and he simply told me that he felt that God was working on him.  I realize that most people are on a journey in life, and Louis would confess that he isn't entirely a Christian.  Like most people, he has questions.  However, through these months that Cathy and I have gotten to know Louis, we have noticed a very sincere young man.  We notice that Louis has accepted his own mistakes and is willing to accept his punishment.

Your Honor, Cathy and I are writing to you asking for leniency for Louis Ong.  We know a young man who has confessed to his wrongdoing and we believe that he has something to offer this world.  Louis is humble, gentle, kind, compassionate, understanding, friendly and repentant.  We are praying that you will see these same qualities and impose the most lenient sentence possible.

Thank you for your consideration of our friend,


Steven Scott Green          4/12/18                    Cathy L. Green   4/12/18

Exhibit C - 39



Exhibit C - 40

Jill M Boadway

April 20, 2018

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

United States v. Louis Ong
CR 17-191-RSL

Dear Judge Lasnik,

I am a friend of Louis Ong's, and met him in the spring of 2008, as we were both taking Landmark
Education's Introduction Leaders Program in Vancouver, BC. During the 6 month intensive program
Louis consistently showed up with a positive and friendly attitude of encouragement for others in the
course, and demonstrated his commitment to learning and personal growth.

My educational background includes a Bsc., Biology, a Culinary Management Diploma, and also a
certificate as a Yoga Teacher. During the Landmark program, my profession was as a Holistic Chef
and Culinary Coach, and in 2009 Louis very generously assisted me in providing space for hosting a
special event which I had created for clients to experience transformation in their relationship to
nourishment. Throughout the planning to the completion of that event Louis made himself available
with much patience and the same positive attitude of support that I had witnessed during the Landmark
program. Without his efforts I might not have been able to offer an event which impacted the lives of
those who attended it, and future events like it, in a positive way.

Later in 2013 I undertook professional training from the International Institute of Hand Analysis, and
am now a certified Advanced Hand Analyst – which is a scientific, non-predictive form of hand
reading that yields greater self-understanding for people about their personality psychology. In 2014
Louis and I reconnected and he came to see me as a hand-reading client. From reading his hands one
of the things that stands out in my memory is his sensitive caring nature, and also a gift for
communication, which I could see reflected in what I had previously observed in Louis. Also the fact
that he came for a reading is a further demonstration of his willingness to look at himself, and grow.

When Louis phoned me to explain about his upcoming sentencing, he expressed responsibility for the
crime he has pleaded guilty to, and sincere regret for his previous actions. I appreciated his openness
and honesty about it, and the knowledge of it does not impact my view of him as a person with a
positive character who wants to be of service to others. Please consider imposing the lowest sentence
permitted under the law for Louis, as I believe he has taken all that has occurred to heart, and wants to
move forward with correction of his actions.

Sincerely,
Jill M Boadway

Exhibit C - 41

Jill M Boadway

April 20, 2018

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

United States v. Louis Ong
CR 17-191-RSL

Dear Judge Lasnik,

I am a friend of Louis Ong's, and met him in the spring of 2008, as we were both taking Landmark
Education's Introduction Leaders Program in Vancouver, BC.  During the 6 month intensive program
Louis consistently showed up with a positive and friendly attitude of encouragement for others in the
course, and demonstrated his commitment to learning and personal growth.

My educational background includes a Bsc., Biology, a Culinary Management Diploma, and also a
certificate as a Yoga Teacher.  During the Landmark program, my profession was as a Holistic Chef
and Culinary Coach, and in 2009 Louis very generously assisted me in providing space for hosting a
special event which I had created for clients to experience transformation in their relationship to
nourishment.  Throughout the planning to the completion of that event Louis made himself available
with much patience and the same positive attitude of support that I had witnessed during the Landmark
program.  Without his efforts I might not have been able to offer an event which impacted the lives of
those who attended it, and future events like it, in a positive way.

Later in 2013 I undertook professional training from the International Institute of Hand Analysis, and
am now a certified Advanced Hand Analyst – which is a scientific, non-predictive form of hand
reading that yields greater self-understanding for people about their personality psychology.  In 2014
Louis and I reconnected and he came to see me as a hand-reading client.  From reading his hands one
of the things that stands out in my memory is his sensitive caring nature, and also a gift for
communication, which I could see reflected in what I had previously observed in Louis.  Also the fact
that he came for a reading is a further demonstration of his willingness to look at himself, and grow.

When Louis phoned me to explain about his upcoming sentencing, he expressed responsibility for the
crime he has pleaded guilty to, and sincere regret for his previous actions.  I appreciated his openness
and honesty about it, and the knowledge of it does not impact my view of him as a person with a
positive character who wants to be of service to others. Please consider imposing the lowest sentence
permitted under the law for Louis, as I believe he has taken all that has occurred to heart, and wants to
move forward with correction of his actions.

Sincerely,
Jill M Boadway

Jill M Boadway

Exhibit C - 42

United States District Court

For the Western District of Washington

<u>United States v. Louis Ong</u>

<u>CR 17-191-RSL</u>

Dear Judge Lasnik,

2013 was a year of newfound challenges and uplifting friendships. After a long period of on-and-off jobs, I had finally found my bearings professionally as a Manager of Construction Operations here in Vancouver, Canada. As a developing adult, one of my priorities was to have a circle of friends and family I could trust so I focused on making meaningful friendships. I met Louis during this time, we became close friends and we bonded during our trip to Peru, my home country.

My impression of Louis is that he is a kind person and careful listener. He has been my partner in hiking here in Vancouver, a guest at countless dinner parties at my house and friend of my wife. We initially met in Vancouver, but we became closer friends during a trip to Peru. In Lima, I belong to a close-knit community of families and friends that spans generations. I did not hesitate to introduce Louis to these acquaintances with my highest recommendations because I saw that Louis was a person that contributed a positive energy to my life.

My wife, Diana Misquez, is originally from Albuquerque, New Mexico. When she moved to Vancouver to live with me she had no friends and the first person to welcome her was Louis. I did not have much money back then so Louis invited us for sushi, her favorite dish. We had a memorable night and I can only hope that life gives me a chance to return the favor.

I am extremely surprised to know that my friend Louis is now going through the justice system. Recently, Louis and I had a conversation on the phone and I became aware that he pleaded guilty to a crime. I never truly understood what his work was, but I always knew that Louis is a person who thinks progressively and does not have a malicious intent. I perceive that he has matured and that he has made amends to correct the poor judgement that led him to this situation.

I am troubled to hear that he is now unable to return to Canada and that he might face criminal charges. My wife and I would be losing an invaluable friendship and I want to plead you, Judge Lasnik, to impose the most lenient sentence the Court considers to be appropriate.

Sincerely,

Bernardo Castanon

Bernardo Castanon

Exhibit C - 43

Honorable Robert S. Lasnik
United States District Court
for the Western District of Washington

Exhibit C - 44

United States v. Louis Ong
CR 17-191-RSL

Dear Your Honor,

My name is Gabriel Castanon and I have known Louis for around 5 years. I first met Louis through one of my best friends named Thomas Czaszynski. In the years I have known Louis, we have gone on numerous hikes, coffees, dinners, and events. I have always liked Louis for his intelligence and kind nature, and I am currently struggling to put feelings to words because of how much potential I see in him and the circumstances he is currently in. He is the type of person I would invite to Thanksgiving dinner to meet my whole family. In fact, my older brother is also friends with Louis, and has invited him to family events more than once.

One point that is important to make is that every conversation I have ever had with Louis has been a respectful one. We always talk about improvement, whether it's health or business. Not once has Louis complained to me about anything or made negative remarks about someone else. It may seem small, but it shows a lot about his true character.

A bit about me: I am currently the Chief Operating Officer of a small company focused on fast additive manufacturing (3D Printing) of plastics. The company name is NewPro3D and I am in charge of overall direction, hiring people, allocating resources, and more. I am 26 years old and studied Mechanical Design at the British Columbia Institute of Technology, although I left early after winning a business competition and $11,500 to start a business. I currently also study at night taking two courses, Computer Science and Accounting.

Life takes us through many turns, and I am well aware that Louis made a mistake. In my eyes, it does not reflect on who he is as a person. When he is back in Vancouver, I will make sure to see him for coffees and dinners as I used to. Even with my hectic schedule, time spent with Louis is always time well spent. I really care for him as a friend, and I cannot say that I have many.

I know Louis played Ultimate Frisbee in Vancouver and he invited me many times. I never had a chance to attend. But I did meet many of the friends he made through this sport, and they were very nice people.

I hope you will see in him what I saw in him that sparked a great friendship. Louis is a good person with incredible potential and ability to contribute good things to those around him. Of course, I hope he will receive the minimum sentence possible.

Thank you for taking the time to read this,

Gabriel Castanon

Exhibit C - 45

Honorable Robert S. Lasnik
United States District Court
For the Western District of Washington

## <u>United States v. Louis Ong</u>

### CR 17-191-RSL

Dear Judge Lasnik:

My name is Kevin Reyes Prato, and I am a Venezuelan artist currently working for an animation company in Vancouver called Animal Logic. In 2014, I met Louis Ong through a friendly approach with the common interest of Ultimate Frisbee. We participated in multiple Ultimate games, playing together as well as on opposing teams. Through these games and post-game social events, I found Louis not only an extremely passionate team member, team captain and coach, but also an inspiring motivational speaker in the Ultimate community. He enjoys putting aside time to manage and organize events and games for his work colleagues and team members. I also found that Louis was very respectful to, and considerate of, the people he engaged with.

When I first moved to Canada in 2013 to study computer graphics, I acutely experienced the challenges that many immigrants face: low income, poor communication skills, and no social support. As I wrestled with learning English and managing the cost of living, Louis was there. He showed constant support and concern for my well-being and has always offered assistance when I was in need. He would often ask about the wellness of my family back in Venezuela and showed genuine care for my family and me. While I was alone during the first duration of my stay in Canada, Louis was there as the great friend I could rely on, hence earning the utmost of my respect.

Louis, to me, is one of the most kind and selfless people I know. He genuinely cares for those around him, and he has been a huge support to me from the moment I met him 4 years ago. I am aware that Louis has pleaded guilty to his conduct, and I believe he genuinely feels sincere remorse and regret for his actions. I plead that Your Honor may impose the most lenient sentence the Court considers to be appropriate.

Sincerely,

Kevin Reyes Prato.

Exhibit C - 46

Honorable Robert S. Lasnik
United States District Court
For the Western District of Washington

### United States v. Louis Ong

#### CR 17-191-RSL

Dear Judge Lasnik:

My name is Kevin Reyes Prato, and I am a Venezuelan artist currently working for an animation company in Vancouver called Animal Logic. In 2014, I met Louis Ong through a friendly approach with the common interest of Ultimate Frisbee. We participated in multiple Ultimate games, playing together as well as on opposing teams. Through these games and post-game social events, I found Louis not only an extremely passionate team member, team captain and coach, but also an inspiring motivational speaker in the Ultimate community. He enjoys putting aside time to manage and organize events and games for his work colleagues and team members. I also found that Louis was very respectful to, and considerate of, the people he engaged with.

When I first moved to Canada in 2013 to study computer graphics, I acutely experienced the challenges that many immigrants face: low income, poor communication skills, and no social support. As I wrestled with learning English and managing the cost of living, Louis was there. He showed constant support and concern for my well-being and has always offered assistance when I was in need. He would often ask about the wellness of my family back in Venezuela and showed genuine care for my family and me. While I was alone during the first duration of my stay in Canada, Louis was there as the great friend I could rely on, hence earning the utmost of my respect.

Louis, to me, is one of the most kind and selfless people I know. He genuinely cares for those around him, and he has been a huge support to me from the moment I met him 4 years ago. I am aware that Louis has pleaded guilty to his conduct, and I believe he genuinely feels sincere remorse and regret for his actions. I plead that Your Honor may impose the most lenient sentence the Court considers to be appropriate.

Sincerely,

Kevin Reyes Prato.

Exhibit C - 47

**Michael Waring**

a

April 26th, 2018

**Honorable Robert S. Lasnik**
**United States District Court**
**for the Western district of Washington**

<u>**United States v. Louis Ong**</u>
**CR 17-191-RSL**

Dear Judge Lasnik,

My name is Mike Waring and I have had the pleasure of knowing Louis through our enrollment in Landmark Education. We have taken Self Expression Leadership and Introduction Leadership courses through Landmark Education and I spent a lot of time with Louis both in and out of the classroom. Since then we have maintained a friendship. I know Louis to be a man with integrity and compassion. I think this is evidenced by his pleading guilty to his charges, as he will not back down or make excuses for any mistakes he has made.

I am a Licensed Mortgage Broker in Vancouver and when I was starting out, Louis was there to help me get established and give me advice on how to get my business started, drawing on his business experiences. He is always willing to help me out.

I am writing to ask you for your leniency in sentencing Louis and please give him the lowest permissible sentence allowed by the law. He is a good person and has much more to offer to our society.

Sincerely,

Michael Waring

Exhibit C - 48

**Honorable Robert S. Lasnik**

**United States District Court**

**for the Western District of Washington**

### United States v. Louis Ong CR 17-191-RSL

Dear Judge Lasnik,

My name is Justin Angeles, I'm a personal trainer and friend of Louis. I've know Louis through my work as a personal trainer at Steve Nash Fitness World & Sports Clubs for 8 months whilst he was in Vancouver, Canada. In my field of work, I meet very interesting people with different personalities. They all come to myself sharing one goal, to attain the best physique and fitness level they can achieve. As a result, it is a responsibility and passion of mine to provide them with the guidance and knowledge needed to do so. Louis was one of the variety of clients I have been able to develop a strong relationship with.

When Louis first joined the gym and was looking to reach his fitness goal, he hired me and we had an instant connection. Louis would show up to every training session driven and ready to work hard. Throughout our 8 months of training Louis not only became a client but a friend. I'd ask him for advice and for help, he was always very genuine in wanting to help out anyway possible. I also thought of Louis as a man of generosity due to the commitment of his time and small favours that he had done for myself. Within the 8 months that I had gotten the chance to know him, I can certainly classify him as a person of dignity, rigour and selflessness. I am grateful to have met him throughout my career.

Exhibit C - 49

Though Louis is guilty for a crime he did commit, it does not lessen my respect or impression of him as an individual in society. His actions may not be justified, but his traits as a person are legitimate and should not degrade others' impressions of him. I am positive that whatever the outcome of his case may be, he will still remain true to himself and his many loved ones. It is with great respect for Louis, the Court and Judge Lasnik that I close this





memorandum. I am honoured to have the opportunity to share my opinion and thoughts about him.

Exhibit C - 50

TO:  Honorable Robert S. Lasnik
United States District Court for the Western District of Washington

Dear Judge Lasnik----

United States v. Louis Ong
CR 17-191-RSL

Your Honor, I am writing this letter to you on behalf of Mr. Louis Ong.    I have recently heard that he has had legal troubles in the US.

I am a retired Canadian citizen, formerly a Senior Vice-President with Loblaw Companies, a Canadian firm with annual sales of approximately $46 Billion Can ($36 Billion US).  I currently live in Vancouver Canada. When I retired, I was located in Calgary but wanted to relocate to Vancouver, and that is how I met Louis.

I needed a place to live in Vancouver while I made my relocation plans and was lucky enough to be put in contact with Louis.   He had a one bedroom condo apartment located in downtown Vancouver.   For two summers, I rented his apartment on a furnished basis.

It is difficult to trust someone you have just met with looking after your condo.  It was filled with Louis furniture and possessions.   We made an arrangement and I moved in and had a great summer.   After spending some time away from Vancouver, Louis and I made contact and I rented it again.   It is difficult to be a landlord and rent out your own personal premises, but Louis handled everything in a very professional manner.  All of our dealings were very pleasant.  I regret that we have not been in contact for a few years, but I am away and travelling a lot.

I believe that he is a very honest and straight forward individual, with good values and respect for his family, the law and society in general.  I know very little about the problems that he is now having with US law, but I was very surprised to hear about it.   As a retired Civil Engineer, my knowledge of legal matters is limited and I would not even try to pretend to understand what has happened in this case.

I believe he is a good person, and I would respectfully ask you to consider this when determining his sentence. Based on what I know of him, I would hope that you could consider the lowest possible sentence allowable under the law.

Thank you for taking the time to read my letter and for considering a request for leniency in Louis case. Should you or the court wish, I am available (contact info below) to provide any additional information required regarding my relationship with Louis.

Your truly,

Randy Heys

Exhibit C - 51

1

**CERTIFICATE OF SERVICE**

2

3        I certify that on May 4, 2018, I electronically filed the foregoing Memorandum with the

4  Clerk of the Court using the CM/ECF system, which will automatically send notification of such

5  filing to the parties.  A copy also will be sent via electronic mail to:

5                                   Steven M. McNickle
                                    Steve_McNickle@wawp.uscourts.gov
6                                   United States Probation Officer
                                    Tacoma, WA 98402-3234
7

8
                                              _/s/ Brian E. Klein_____
9                                   BRIAN E. KLEIN
                                    Baker Marquart LLP
10                                  2029 Century Park E – Suite 1600
                                    Los Angeles, CA  90067
11                                  Email: bklein@bakermarquart.com
                                    Telephone: (424) 652-7800
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28