The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LOUIS ONG, <br><br> Defendant. | NO. CR17-191 RSL <br><br> GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Joseph C. Silvio, Special Assistant United States Attorney for said District, respectfully submits this memorandum regarding the sentencing of LOUIS ONG, scheduled for May 11, 2018, at 11:30 a.m.

For the reasons that follow, the government joins in the recommendation of U.S. Probation and requests that the Court sentence the defendant to a custodial term of twelve months and one day, followed by a three-year term of supervised release.

I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2016, Special Agent (SA) Judson Scott, Homeland Security Investigations (HSI) Seattle, responded to an advertisement regarding the buying and selling of bitcoin through various means – to include the U.S. Mail and in-person

Government's Sentencing Memorandum - 1
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

exchange. PSR at ¶ 7. After an exchange of text messages between the poster of the advertisement – determined by investigation to be LOUIS ONG – and SA Scott, a bitcoin deal was set-up for December 15, 2016. *Id*.

On December 15, 2016, ONG and an HSI undercover agent (UCA-1) met at a McDonald's restaurant in Tukwila, Washington. *Bates* 007. During the meeting, an HSI UCA exchanged $12,000 in U.S. Currency (hereinafter "U.S. Currency" or "USD") for bitcoin. *Id*. ONG provided UCA-1 with bitcoin worth approximately $11,123.83 USD. *Id*.

On February 1, 2017, UCA-1 again met with ONG for the purpose of exchanging U.S. Currency for bitcoin. *Bates* 007; 636. Prior to the transaction, ONG was informed that the $50,000 USD that were being exchanged for bitcoin were illicit in nature. PSR at ¶ 9; *Bates* 636. When UCA-1 disclosed this fact, ONG explained:

> I don't know anything about that, so, what you just told me, like, went over my head. I didn't hear that. So there is one thing I tell people is I don't really care what, ah, they use the bitcoin for . . . The only thing is, I just like, ah, because for me it's better that I actually don't know. Cause then I can have plausible deniability. Cause at the same time, cash can be used for anything, right? So really, yeah, I just, I didn't hear that.

*Id*. Despite the representations made by UCA-1, ONG continued with, and completed, the transaction – charging slightly over 9% for the transaction. *Id*.

On March 7, 2017, after conducting another $20,000 transaction with another HSI UCA on March 1, 2017, ONG sent SA Scott the following text message:

> I have a request. I am not interested in what you buy or sell btc for, so please do not mention it or have your friends mention it either. In both cases your operatives tried to discuss with me what your operations are. Not interested and don't have the time. I am just a private investor who sells btc to other investors. As far as I know you're just an investor. Let's keep it that way.

PSR at ¶ 9; *Bates* 124.

On May 10, 2017, HSI agents encountered ONG parked near their office spaces in Blaine, Washington. *Bates* 032. In plain view, an HSI SA could see that

Government's Sentencing Memorandum - 2
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ONG was passing U.S. Currency through a money counter located in the passenger seat of the vehicle.[1] *Id.*

During the encounter, ONG agreed to speak with law enforcement and acknowledged that he had just received $45,000 in USD from an unknown subject from Arizona. *Id.* ONG stated that he had only conducted a few cash-for-bitcoin deals through the mail. *Id.* He specifically did not mention any of the face-to-face cash-for-bitcoin deals that he had conducted with HSI UCAs in late 2016 or early 2017. *Id.* ONG was told that he needed to register as a money remitter with FinCEN.

On June 1, 2017, ONG called HSI Blaine and informed an HSI SA that he had registered with FinCEN as an MSB. *Bates* 039.

On June 12, 2017, despite having just filed registration documents with FinCEN, ONG again met with individuals who were represented to be members of SA Scott's organization. *Bates* 041. The purpose of the meet as communicated by SA Scott to the defendant was to discuss the use of bitcoin as a means of moving drug proceeds from the U.S. to Mexico and to exchange $20,000 USD for bitcoin. *Id.* During this meeting, the defendant again mentioned to HSI UCAs that he needed to maintain "pd" or "plausible deniability. *Id.*; *Bates* 638.

On July 7 and 21, 2017, the defendant again engaged in an anonymous face-to-face bitcoin exchange with an HSI UCA. The deal on July 9, 2017, was for $9,000 USD. *Bates* 652. The exchange on July 21, 2017, was planned to be for $400,000 USD. *Bates* 661-62. ONG was arrested after the first transaction involving $200,000 of cash-for-bitcoin. *Id.*

Ultimately, over the course of the seven-month investigation, ONG engaged in six face-to-face transactions with HSI UCAs. PSR at ¶ 10. He also engaged in one cash-through-the-mail transaction. *Id.* The total value of the U.S. Currency that ONG

---

[1] This encounter was not based upon surveillance or investigation, but rather, pure chance.

Government's Sentencing Memorandum - 3
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

received during these transactions was $311,000.  *Id*. at ¶ 8.  At no point during any of the transactions – even after he registered with FinCEN on or about May 31, 2017 – did the defendant in any way attempt to comply with the "know your customer" / anti-money laundering requirements mandated for Federally or State licensed money service businesses.  *Id*. at ¶ 9.

## II.   CURRENT CHARGES AND PLEA AGREEMENT

On August 16, 2017, the defendant was indicted by Grand Jury in the Western District of Washington for five counts of Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(3)(B) and 2; and Operating an Unlicensed Money Transmission Business, in violation of 18 U.S.C. §§ 1960(b)(1)(A), and 2.  Dkt. 16.

On February 15, 2018, pursuant to a plea agreement under Federal Rules of Criminal Procedure 11(c)(1)(A) and (B), the defendant pleaded guilty to Count 6 of the Indictment.  Dkt. 36.  Per the plea agreement the government agreed to limit its sentence recommendation to eighteen months, and also agreed to move for dismissal of Counts 1 – 5 of the Indictment at the time of sentencing.  *Id*. at ¶¶ 10, 14.

## III.   ADVISORY GUIDELINES RANGE

In the plea agreement, the parties agreed that certain Guidelines factors applied to the defendant's conduct.  *Id.* at ¶ 9.  However, pursuant to the plea agreement, the parties were free to also seek application of additional Sentencing Guidelines.  *Id*.

The government agrees with the conclusion of U.S. Probation that in addition to the sentencing factors enumerated in Paragraph 9 of the plea agreement, USSG § 2S1.3(b)(1) also applies in this case.  PSR at ¶ 19.  The government also agrees with U.S. Probation's total offense level calculation of 20.  *Id*. ¶ 23.  With a criminal history category of I, and a three-level reduction for acceptance of responsibility, the corresponding guidelines range is 24 – 30 months.  *Id*. at ¶ 62.

## IV.   18 U.S.C. § 3553 ANALYSIS

The government recommends that the Court sentence the defendant to a total term of imprisonment of twelve months and one day, followed by a three-year term of

Government's Sentencing Memorandum - 4
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

supervised release. This recommendation is based on the factors set forth in 18 U.S.C. § 3553(a), with a particular focus on the nature and circumstances of the offense, the defendant's history and characteristics, the need to deter similar conduct, protect the public, and promote respect for the law.

### 1. Nature and Circumstances of the Offense.

The nature and circumstances of the offense warrant a significant period of incarceration. The evidence obtained during the investigation indicates that the defendant operated an unlicensed money transmission business over the course of nearly two years. While the offense of conviction may appear to be more of a technical violation of law, it is clear based upon the defendant's interactions with HSI UCAs, why such conduct is criminalized. In short, such cryptocurrency transactions can be used much like the traditional Hawala system of money movement – only with a 21st Century twist.

Additionally, unlicensed cryptocurrency money transmission businesses – such as the defendant's – are critical to the operation of Darknet marketplaces such as Silk Road, Silk Road 2.0, Alpha Bay, *etc.*, as these markets require payment for their illicit goods – ranging from controlled substances to stolen credit cards – via cryptocurrency. Off-book businesses such as the Defendant's allow Darknet vendors to anonymously turn their cryptocurrency into fiat currency, and Darknet customers an opportunity to purchase illicit products with a virtually untraceable source of payment.

Significantly, based upon his multiple statements to HSI UCAs and SA Scott, the defendant's response to the above appears to be that he is not concerned with such things as long as he has "plausible deniability."

Perhaps the most serious aspect of the defendant's offense, however, is the fact that not only did he operate a business that is tailor-made for money laundering in the 21st Century, but also, continued to do so after being encountered by HSI Blaine agents in May 2017. While the defendant did register with FinCEN as a money transmission business shortly after being encountered, such registration appears to the government to be nothing other than an attempt to create a paper record of compliance. This assertion is

Government's Sentencing Memorandum - 5
*United States v. Louis Ong*, CR17-191 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

supported by the fact that not two weeks after he registered with FinCEN, defendant conducted a transaction with HSI UCAs where the purpose of the meeting – in addition to moving $20,000 in drugs proceeds to Mexico via cryptocurrency – was to discuss how to integrate this cryptocurrency into the legitimate financial system once in Mexico.

Ultimately, the defendant was not just failing to employ any anti-laundering measures in the operation of his money transmission business, but based upon his interactions with HSI undercovers, it appears that it was his business model to cater to them.

### 2. History and Characteristics of the Defendant.

The defendant's history and characteristics are generally mitigating. This is the defendant's first contact with the criminal justice system in the United States or Canada. Furthermore, the defendant is college-educated and prior to engaging in his unlawful money remission business, had periods of gainful employment.

The fact that the defendant is intelligent and well-educated also works against him. Based upon a forensic review of the defendant's digital device, seized at the time of his arrest, it appears that the defendant was involved in the world of bitcoin since at least 2013. Furthermore, based upon a review of these same texts, it appears that as of no later than 2014, the defendant was aware of the fact that at least under the law of some states in the U.S., operating a cryptocurrency exchange business such as his was illegal. Despite this knowledge, and notwithstanding his education and intelligence, the defendant chose to repeatedly come to the U.S. to engage in conduct that he knew was unlawful.

### 3. Affording Adequate Deterrence to Criminal Conduct, Promoting Respect for the Law, Protecting the Public from Further Crimes of the Defendant, and Providing Just Punishment.

The recommended sentence is necessary to protect the public and to promote respect for the law. The government has no information that the defendant ever operated as a Darknet vendor. That said, and as noted above, despite the fact that the defendant never directly engaged in a Darknet transaction, the government has little doubt that his

Government's Sentencing Memorandum - 6
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

business facilitated such illicit transactions – both on the customer and vendor side. Such conduct, though concededly not as significant as that of the Darknet vendor who distributes illicit products, poses a serious public safety risk.

Relatedly, the recommended sentence is necessary to deter others from committing similar crimes. While the government acknowledges that pursuant to his conviction, the defendant will forfeit substantial assets, in the government's mind, such sanction is not a sufficient deterrent. Rather, those who would seek to engage in a business that has the potential to be as lucrative as unlicensed money transmission, need to know that not only will the illicit proceeds and facilitating property related to their offense be seized, such conduct will also result in substantial time in custody.

Ultimately, imposition of the recommended sentence sends the necessary message that, although white-collar and financial in nature, serious misconduct such as the defendant's will be met with serious sanction.

## V. CONCLUSION

For the foregoing reasons, the government requests that the Court sentence the defendant to a total sentence of twelve months and one day, followed by a period of supervision of three years.

DATED this 4th day of May, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/ Joseph C. Silvio*
JOSEPH C. SILVIO
Special Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-3903
Telephone: (206) 553-4254
Fax: (206) 553-0755
E-mail: joseph.silvio@usdoj.gov

Government's Sentencing Memorandum - 7
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Kathleen M. McElroy*
KATHLEEN M. McELROY
Paralegal Specialist
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-0755
E-mail: Katie.McElroy@usdoj.gov

Government's Sentencing Memorandum - 8
*United States v. Louis Ong, CR17-191 RSL*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970